PER CURIAM.
¶1 Sean Michael Faris appeals pro se from an order dismissing his motion to review family support, terminate maintenance, and set child support. For the reasons discussed below, we affirm.
¶2 Jennifer and Sean married in 1991 and divorced in 2010. At the time of their divorce, they had four minor children. Sean worked as a pediatrician and was the family's primary wage earner, while Jennifer was a stay-at-home mother during a significant portion of the marriage. Sean and Jennifer entered into a partial marital settlement agreement (MSA) providing that Sean would pay Jennifer $6500 each month in family support until September 30, 2017. The MSA did not separate the family support total into amounts attributable to child support and to maintenance, and stated that the "income figures" used in calculating family support were Sean's yearly base salary of about $217,000, and imputed income to Jennifer in the annual amount of $25,000. The MSA also provided that Sean would pay Jennifer twenty-three percent of any income above his $217,000 base salary as additional family support. Each party would pay half of the children's variable expenses. Family support payments would be counted as taxable income to Jennifer and would serve as a deduction for Sean.
¶3 The parties agreed that maintenance and child support would be held open during the period of family support. Upon the termination of family support, maintenance would terminate, and child support would be set. The MSA's family support termination provision stated:
3.2 Termination. Family support shall terminate on September 30, 2017, or earlier upon the death of either party or the remarriage of the Petitioner. A marriage like relationship of the recipient spouse shall constitute a substantial change of circumstances and subject Family Support to review.
¶4 In June 2013, upon the parties' stipulation, the circuit court ordered Sean's family support payments increased to $7000 each month, and that Sean would be responsible for all of the children's variable expenses.[1] The stipulation stated that Sean's annual base salary had increased to $280,500 and that annual income of $25,000 would remain imputed to Jennifer. Sean would continue to pay as additional family support twenty-three percent of income received in excess of his now-increased $280,500 base salary. The stipulation stated that the modified amount of family support took into consideration that Sean was now responsible to "pay all variable expenses."
¶5 In August 2016, thirteen months before the termination of the family support order, Sean filed a motion to review family support, terminate maintenance, and set child support. Jennifer filed a countermotion to dismiss, and Sean amended his motion. Sean's amended motion sought an order terminating family support and maintenance, and setting child support at $1982 per month, retroactive to September 1, 2016. As grounds for modification, Sean asserted there was a substantial change of circumstances since the June 2013 order in that Jennifer completed her undergraduate degree in May 2014, she had not worked since April 2015, she had lived in her "boyfriend's mortgage free home since September 2015 and pays no rent," she had taken vacations rather than working, and she was making accelerated bankruptcy payments without working. Sean averred,
That the above constitutes a substantial change of circumstances, as it was intended that the Petitioner would complete her degree, work, and be self-supporting, rather than choosing not to work, and living rent free, while traveling and overpaying on her Chapter 13 plan with my support money.
¶6 Following a postjudgment hearing held over two days, the circuit court dismissed Sean's motion, determining that Sean "has not demonstrated a substantial change of circumstances since the last support Order was entered." After dismissing Sean's motion, the parties entered into a stipulation regarding child support, which provided that upon the termination of family support and commencing October 1, 2017, Sean would pay child support in the monthly amount of $1500 for the remaining minor child. The court accepted the stipulation, incorporating into its written order that child support was "calculated as follows: [Jennifer's] imputed income of $40,000.00 per year, [Sean's] base income of $266,000.00 per year, shared equal placement for one child, for a total of $1,770.00, minus $270.00 per month, as [Sean] will pay [all] variable expenses for the child."[2] Sean appeals the circuit court's dismissal of his motion seeking the early termination of family support and maintenance in favor of child support.
¶7 "In order to modify a maintenance award, the party seeking modification must demonstrate that there has been a substantial change in circumstances warranting the proposed modification." Rohde-Giovanni v. Baumgart , 2004 WI 27, ¶30, 269 Wis. 2d 598, 676 N.W.2d 452. Typically, the focus of the inquiry will "be on any financial changes the parties have experienced." Id . The burden of establishing a substantial change in circumstances lies with the party seeking modification. See Murray v. Murray , 231 Wis. 2d 71, 77, 604 N.W.2d 912 (Ct. App. 1999). "We will uphold a [circuit] court's findings regarding a change in circumstances unless they are clearly erroneous." Id . Whether the change is substantial is a question of law that we review de novo, giving weight to the circuit court's decision because the legal determination is intertwined with the court's factual findings. Id .
¶8 The circuit court properly exercised its discretion in determining that Sean failed to set forth a change of circumstances sufficient to warrant modification. The court carefully considered the facts of record in light of relevant and proper factors, and explicitly applied the case law cited by the parties. The court particularly considered that the parties entered into a detailed stipulation which included seven years of family support in lieu of child support and maintenance, an agreement negotiated by and between the parties which imputed income to Jennifer, required their consent and "wasn't something a judge would impose." Thereafter, in 2013, the parties altered the original order through a stipulation with detailed financial provisions that were the product of mutual negotiation, and left the seven-year term of family support intact.
¶9 Sean maintains that Jennifer's underemployment constitutes a substantial change in circumstances which makes it unfair to him to continue to pay family support. We disagree. The circuit court examined and made findings about the parties' current circumstances in light of the original and amended family support orders. The court was "satisfied that" Jennifer's desire to "upgrade her education and pursue employment" was considered in "setting the seven-year period," but determined that Jennifer's lack of employment did not support modification:
I'm satisfied that the agreement at seven years was so she can obtain her degree, that she would then live or die based upon what she did. If she doesn't have a job or kind of income she thought she would or was anticipated, that's her problem. That doesn't lead this Court to conclude that a substantial change in circumstances has occurred.
¶10 Though the seven-year term afforded Jennifer the opportunity to improve her education and employability, it was not contingent on her performance of these tasks. It was not unfair to Sean to continue his limited-term family support payments even if Jennifer was not actively working:
In particular, in evaluating the fairness concept of it, I don't see maintaining the maintenance award as being unfair to either party. It certainly is part of the bargain that they had as ... to do family support. It usually ends up giving more money to the person receiving it, giving the person paying out that more money the benefit of the tax reduction, which reduces the financial impact.... That to me is the underpinning of a family support order. Here, it was tied into how long it would take to get an education, to be able to find new employment, but that's on ... the petitioner's version in the case. Again, because she fails to do it that's her problem.
¶11 Whereas Jennifer's failure to obtain new employment would negatively impact any effort on her part to set maintenance or extend the term of family support, the court did not see Jennifer's underemployment as "a basis for the respondent to be able to terminate maintenance, it just means it didn't turn out." The court determined this was particularly true given that the agreement was for a limited term of support and was "tied into child support as well as maintenance."
¶12 Next, the circuit court properly exercised its discretion in determining that Jennifer's cohabitation with her boyfriend did not justify modification of the family support order. The court observed that the MSA used the phrase "marriage like relationship," agreed that Jennifer lived in a house provided by her boyfriend, and stated:
She does work at the home, she pays utilities and pays her food expenses. She's not paid for what she does, she helps with gardening, painting, tiling. They go on vacations together and I'm satisfied that they have a relationship, a significant other relationship, I'm not satisfied it's the type of relationship that is equal to a marriage, however.
¶13 The court considered the circumstances of their cohabitation and found it did not cross "the threshold" into a marriage-like relationship. In making its determination, the court cited to case law referencing "financial entanglements," such as the existence of estate planning, whether either is named in the other's will or on a bank account, or if the couple shared joint bank accounts. See Van Gorder v. Van Gorder , 110 Wis. 2d 188, 192, 327 N.W.2d 674 (1983). The circuit court reasoned that there must be "some type of longevity to the [marriage like] relationship, as opposed to a relationship that is-without being unkind about it, which can end today, which can end at 5:00 p.m. today. It's something without any long term entanglements and that's how I see the relationship between" Jennifer and her boyfriend.
¶14 Sean argues that the circuit court erroneously exercised its discretion by "fail[ing] to consider Jennifer's financial enhancement [from cohabiting], and as such is an inadequate application of the fairness doctrine." We are not persuaded. First, the argument ignores that the MSA in this case was a negotiated agreement for family support that by its terms permitted review upon Jennifer entering into a "marriage like relationship," not based solely on her cohabitation. Regardless, Van Gorder specifically holds that the mere fact of cohabitation is not grounds for modification. Id. , 110 Wis. 2d at 197. Second, the circuit court did consider Jennifer's financial circumstances and explicitly applied the "fairness doctrine." See Rohde-Giovanni , 269 Wis. 2d 598, ¶32 ("[T]he correct test regarding modification of maintenance should consider fairness to both of the parties under all of the circumstances."). The circuit court did not ignore the fairness principles in Rohde-Giovanni , but directly quoted its language on the record. Finally, Sean's attempts to analogize his case to others, such as Rohde-Giovanni and Vander Perren v. Vander Perren , 105 Wis. 2d 219, 230, 313 N.W.2d 813 (1982) ("maintenance is not to be viewed as a permanent annuity"), are unpersuasive.[3] The facts are not analogous and, more importantly, any comparison ignores the overarching principle in each case, that maintenance determinations are a matter of discretion for the circuit court.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

The stipulation was reached after the parties filed postjudgment motions concerning the family support order. Sean sought relief concerning Jennifer's alleged failure to pay the children's variable expenses, and Jennifer wanted to increase the support amount based on Sean's increased salary. The circumstances, including other detailed provisions of the signed stipulation, reflect that it was the product of a negotiated agreement between the parties.

Jennifer also filed a motion to extend the term of family support and/or maintenance to September 30, 2020, and a request for attorney's fees. Jennifer withdrew the motion to extend support and/or maintenance, and the circuit court denied her request for attorney's fees. Jennifer does not appeal any portion of the circuit court's order.

Sean also improperly cites to Fenley v. Fenley, No. 2015AP2195, unpublished slip op. (WI App Sept. 7, 2016), "for persuasive authority." Fenley is an unpublished per curiam opinion and cannot be cited as persuasive authority. See Wis. Stat. Rule 809.23(3)(b).